JOURNAL ENTRY AND OPINION.
{¶ 1} Defendant-appellant, Johnnie Edwards, appeals from the judgment of the Cuyahoga County Court of Common Pleas, rendered after a jury verdict, finding him guilty of three counts of gross sexual imposition and sentencing him to one year of incarceration. For the reasons that follow, we affirm.
 {¶ 2} The record reflects that on January 8, 2002, the Cuyahoga County Grand Jury indicted appellant on three counts of gross sexual imposition, in violation of R.C. 2907.05. Appellant pled not guilty to the charges and a jury trial commenced on March 13, 2002.
 {¶ 3} Bridgette English testified at trial that she met appellant at the Aristocrat Berea Nursing Home, where both were employed, in April 2001. She developed a relationship with him and in August 2001, appellant moved in with English and four of her ten children. English testified that her children liked appellant and that he would sometimes babysit them for short periods of time.
 {¶ 4} On December 24, 2001, while she was at work, English received a telephone call from her daughter Talisha, who informed English that she had just learned that appellant had touched English's eleven-year-old daughter B. several times in a sexually inappropriate way. Upon returning home, English learned that appellant had touched B.'s breast on three occasions. When confronted by English when he arrived home from work that day, appellant denied the allegations. English nevertheless reported the allegations to the police on December 26, 2001, and appellant was arrested.
 {¶ 5} Nakisha English, B.'s eighteen-year-old sister, testified that appellant telephoned her on December 26, 2001 after his arrest and asked her if she could help him. Nakisha testified that she asked appellant, "Did you touch my little sister?" According to Nakisha, appellant responded, "I can't remember; no, I didn't do it."
 {¶ 6} B.'s nine-year-old sister Janell Moore testified that one day, while she and B. were in their bedroom, B. told her that appellant had touched her. According to Janell, B. was upset and rubbing her hands together when she told Moore about what appellant had done. Janell testified that B. asked her not to tell anyone else about their secret.
 {¶ 7} The secret came out, however, on December 24, 2001, when Nakisha was babysitting B. and Janell. According to Janell, when she and B. began arguing about whose turn it was to do the dishes, she told B., "I'll tell on you and Johnnie." Upon hearing this comment, Nakisha questioned Janell, but Janell would not tell her what she meant. Nakisha then telephoned Talisha, who spoke with Janell and learned what appellant had done.
 {¶ 8} B. testified that appellant touched her breasts on three separate occasions when she was in her mother's bedroom watching television while her mother was out of the apartment. B. testified that the first time, appellant grabbed her breasts over her clothes, stated, "You are mines (sic)," and then left the room. According to B., a few days later, as she was lying on the bed watching television, appellant sat down on the bed and "just grabbed me." B. testified that she pushed him away and left the room. B. testified that appellant touched her breasts again a third time a few days later while she was in her mother's bedroom. According to B., appellant tried to squeeze her breasts on two of the three occasions. B. testified that the incidents occurred around December 16 or 17, about the same time Radio Disney came to her school. On cross-examination, B. admitted that she never told anyone other than Janell about what had happened to her.
 {¶ 9} Ian Lucash, a social worker at the Cuyahoga County Department of Children and Family Services ("CCDCFS"), testified that on December 28, 2001, CCDCFS received a referral regarding B. from Detective Pamela Berg of the Cleveland Police Department, Sex Crimes Child Abuse Unit. Shortly thereafter, CCDCFS also received an anonymous referral alleging lack of food and neglect of the English children. Lucash testified that after his investigation of both referrals, he categorized the sexual abuse referral as "indicated," meaning there was enough information to indicate that the allegation could be true, but not enough information to determine that it was definitely true, and the neglect referral as "unsubstantiated."
 {¶ 10} At the close of the State's case, appellant moved for acquittal pursuant to Crim.R. 29, arguing that the State had not proven all of the elements necessary to support a conviction of gross sexual imposition. The trial court denied appellant's motion.
 {¶ 11} No witnesses testified on behalf of appellant. The jury subsequently found appellant guilty on all three counts of gross sexual imposition. The trial court sentenced appellant to one year incarceration on each of the three counts, the sentences to be served concurrently. In addition, the trial court adjudicated appellant to be a sexually-oriented offender.
 {¶ 12} Appellant timely appealed, raising four assignments of error for our review.
 {¶ 13} In his first assignment of error, appellant challenges the sufficiency of the evidence supporting his convictions. In his second assignment of error, appellant contends that the trial court erred in denying his Crim.R. 29 motion for acquittal because the State failed to present sufficient evidence to support his convictions.[1]
 {¶ 14} R.C. 2907.05(A), regarding gross sexual imposition, provides, in pertinent part:
 {¶ 15} "No person shall have sexual contact with another, not the spouse of the offender; cause another, not the spouse of the offender, to have sexual contact with the offender; or cause two or more other persons to have sexual contact when any of the following applies:
 {¶ 16} "* * *
 {¶ 17} "(4) The other person, or one of the other persons, is less than thirteen years of age, whether or not the offender knows the age of that person."
 {¶ 18} "Sexual contact" is defined in R.C. 2907.01(B) as "any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person."
 {¶ 19} Appellant contends that the State failed to present evidence that the touching of B.'s breasts occurred for the purpose of sexual arousal or gratification. Accordingly, appellant contends, the State failed to present sufficient evidence of an essential element of the offense of gross sexual imposition and, therefore, the trial court erred in denying his Crim.R. 29 motion for acquittal.
 {¶ 20} A challenge to the sufficiency of the evidence supporting a conviction requires a court to determine whether the State has met its burden of production at trial. State v. Thompkins (1997),78 Ohio St.3d 380, 390. On review for sufficiency, courts are to assess not whether the State's evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction. Id. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus.
 {¶ 21} "Sexual contact" has been defined as "any touching of the described areas which a reasonable person would perceive as sexually stimulating or gratifying." State v. Astley (1987), 36 Ohio App.3d 247,250. Mere proof of the act of touching a described area, however, is insufficient to prove gross sexual imposition. In re April Anderson
(1996), 116 Ohio App.3d 441, 443. There must be some evidence of sexual gratification as the purpose for the touching. Id.
 {¶ 22} There is no requirement, however, that there be direct testimony regarding sexual arousal or gratification. State v. Oddi, Delaware App. No. 02CAA01005, 2002-Ohio-5926. As this court noted inState v. Maybury (Aug. 11, 1994), Cuyahoga App. No. 65831, citing Statev. Uhler (1992), 80 Ohio App.3d 113, 123, "the existence of prurient motivations may be discerned from `the type, nature, and circumstances of the contact, along with the personality of the defendant.'" Accordingly, in the absence of direct testimony regarding sexual arousal or gratification, the trier of fact may infer that a defendant was motivated by a desire for sexual arousal or gratification from the totality of the circumstances. Oddi, supra.
 {¶ 23} Appellant asserts that there was no evidence that he was physically or audibly aroused and he did not speak any words with a sexual connotation. He further contends that there was no evidence that he threatened the victim or suggested to her that the encounters were to be kept secret. Therefore, appellant argues, there was no evidence regarding a sexual motivation or purpose for the contacts.
 {¶ 24} We find, however, that there was sufficient evidence from which the jury could have inferred that appellant's motive was sexual arousal or gratification. First, we note that sexual contact within the meaning of gross sexual imposition only requires proof of "the purpose of sexually arousing or gratifying, it does not require proof of actual arousal or gratification." State v. Maybury (Aug. 11, 1994), Cuyahoga App. No. 65831. Thus, appellant's argument regarding the lack of evidence of sexual arousal is without merit. Here, the victim testified that appellant approached her three times while she was alone in her mother's bedroom and touched her breasts. There was no evidence that appellant's hands were on the victim's breasts by accident or for any legitimate purpose. Moreover, on at least one occasion, appellant stated, "you are mine[s]" when he touched and squeezed the victim's breasts. We believe that the jury could find this statement, coupled with appellant's actions, to be sufficient evidence that appellant's purpose in touching B.'s breasts was sexual arousal or gratification.
 {¶ 25} Accordingly, we hold that the State met its burden of production at trial and, therefore, the trial court did not err in denying appellant's Crim.R. motion for acquittal.
 {¶ 26} Appellant's first and second assignments of error are overruled.
 {¶ 27} In his third assignment of error, appellant contends that the trial court erred in allowing Nakisha English to testify regarding what appellant said to her when he called her on December 26, 2001 after his arrest. Nakisha testified that appellant asked for her help and further, that he first said he could not remember if he had touched B., and then denied touching her, when Nakisha asked him about the incidents. Appellant contends that his statements should have been excluded as inadmissible hearsay. We disagree.
 {¶ 28} Evid.R. 801(D) provides that certain statements are not hearsay:
 {¶ 29} "(D) Statements which are not hearsay
 {¶ 30} "A statement is not hearsay if:
 {¶ 31} "* * *
 {¶ 32} "(2) Admission by party-opponent. The statement is offered against a party and is (a) his own statement, in either his individual or a representative capacity * * *."
 {¶ 33} Here, the statements that appellant objects to fall within Evid.R. 801(D)(2) as nonhearsay. The statements are clearly appellant's own statements. Moreover, appellant's equivocal statement that he could not remember touching B., coupled with his subsequent denial that he touched her, could be construed as an incriminating admission by appellant. Accordingly, the statements
 {¶ 34} were not hearsay and the trial court properly denied appellant's motion in limine to exclude them.
 {¶ 35} Appellant's third assignment of error is overruled.
 {¶ 36} In his fourth assignment of error, appellant contends that his convictions were against the manifest weight of the evidence.
 {¶ 37} A manifest weight of the evidence argument involves determining whether there exists a greater amount of credible evidence offered in a trial to support one side of the issue rather than the other. State v. Thompkins (1997), 78 Ohio St.3d 380, 387. Weight is not a matter of mathematics, but depends on its effect in inducing belief. Id.
 {¶ 38} When reviewing a claim that the judgment in a criminal case is against the manifest weight of the evidence, this court reviews the entire record, weighs the evidence and all reasonable inferences, considers the credibility of the witnesses and determines whether, in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the onviction must be reversed and a new trial ordered. Thompkins, supra, citing State v.Martin (1983), 20 Ohio App.3d 172, 175.
 {¶ 39} Appellant contends that the lack of evidence on several issues indicates that his convictions were against the manifest weight of the evidence. According to appellant, B. did not report the incidents to anyone in authority who could have helped her, such as her mother, older siblings or a teacher at her school. Likewise, there was no evidence that she acted any differently than normal during the time period in December when the incidents occurred; she did not miss any days of school nor did she seek any counseling regarding the incidents. Finally, appellant asserts, there were no eyewitnesses to the incidents and no one who lived in or visited the small apartment where the incidents took place reported seeing or hearing anything unusual regarding B. and appellant.
 {¶ 40} Appellant's argument ignores the significant evidence against him, however. The eleven-year-old victim testified to three separate incidents when appellant touched her breasts. She described the incidents in detail and recalled where and when they happened. She also recalled what appellant told her during one of the incidents: "You are mine." She testified that she told her younger sister what had happened and this sister corroborated her testimony.
 {¶ 41} In light of this evidence, the jury could have reasonably believed that appellant was guilty of gross sexual imposition. Accordingly, it cannot be said that the jury lost its way and created such a miscarriage of justice that appellant's convictions must be reversed. Appellant's convictions were not against the weight of the evidence and, therefore, the fourth assignment of error is overruled.
Judgment affirmed.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal. It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
JAMES J. SWEENEY, J. and DIANE KARPINSKI, J. concur.
[1] Crim.R. 29(A) provides that "the court, on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment * * * if the evidence is insufficient to sustain a conviction of such offense or offenses."