[Cite as *State v. Coleman*, 2015-Ohio-4491.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 102291**

**STATE OF OHIO**

PLAINTIFF-APPELLEE

vs.

**DEDRIC COLEMAN**

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-14-584060-A

**BEFORE:** Celebrezze, A.J., Jones, J., and Boyle, J.

**RELEASED AND JOURNALIZED:** October 29, 2015

**ATTORNEY FOR APPELLANT**

Ruth R. Fischbein-Cohen
3552 Severn Road, #613
Cleveland, Ohio 44118


**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor
BY:     Edward R. Fadel
Assistant Prosecuting Attorney
The Justice Center, 9th Floor
1200 Ontario Street
Cleveland, Ohio 44113

FRANK D. CELEBREZZE, JR., A.J.:

**{¶1}** Defendant-appellant, Dedric Coleman, was charged with one count each of rape, in violation of R.C. 2907.01(A)(1)(b), gross sexual imposition, in violation of R.C. 2907.05(A)(4), and kidnapping, in violation of R.C. 2905.01(A)(4). Each count also contained a sexually violent predator specification pursuant to R.C. 2941.148(A). Following a jury trial in July 2014, appellant was found not guilty of the rape and kidnapping charges. However, the trial court declared a mistrial on the gross sexual imposition count after the jury announced it could not reach a decision.

**{¶2}** A second jury trial was held in September 2014 on the gross sexual imposition count. Appellant was found guilty of gross sexual imposition, and the court found him to be a sexually violent predator based on the facts of this case and a prior conviction for another sex offense. At the October 28, 2014 sentencing hearing, the trial court classified appellant as a tier II sex offender and imposed a prison sentence of five years to life.[1] This appeal followed.

## I. Sufficiency of the Evidence

**{¶3}** In his first assignment of error, appellant contends that there was insufficient evidence to support his conviction for gross sexual imposition.

**{¶4}** A challenge to the sufficiency of the evidence underlying a conviction requires an appellate court to determine whether the state has met its burden of production at trial. *State v. Thompkins*, 78 Ohio St.3d 380, 390, 678 N.E.2d 541 (1997). In evaluating a sufficiency challenge, the relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime

---

[1]At the time of the offense, the victim was seven years old.

proven beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

{¶5} Gross sexual imposition, as it pertains to this case, means "sexual contact with another, not the spouse of the offender * * * [when] [t]he other person * * * is less than thirteen years of age, whether or not the offender knows the age of that person." R.C. 2907.05(A)(4).

{¶6} Sexual contact is defined as "any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person." R.C. 2907.01(B). The applicable mental state for gross sexual imposition is purposeful. *State v. Dunlap*, 129 Ohio St.3d 461, 2011-Ohio-4111, 953 N.E.2d 816, ¶ 23.

{¶7} R.C. 2901.22(A) defines "purposely" as the "specific intention to cause a certain result, or when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is the offender's specific intention to engage in conduct of that nature." Purpose may be inferred from an offender's conduct, and "the trier of fact 'may infer what the defendant's motivation was in making the physical contact with the victim' by considering 'the type, nature and circumstances of the contact, along with the personality of the defendant.'" *State v. Salinas*, 10th Dist. Franklin No. 09AP-1201, 2010-Ohio-4738, ¶ 30, quoting *State v. Cobb*, 81 Ohio App.3d 179, 185, 610 N.E.2d 1009 (9th Dist.1991).

{¶8} Appellant argues that the lack of DNA evidence, the absence of corroborative testimony from the victim's brother, who was sleeping in the bed next to the victim the evening of the incident, and conflicting testimony from witnesses warrant a reversal of his gross sexual imposition conviction. In this case, the trial court declared the eight-year-old female victim unavailable to testify when she refused to enter the courtroom after screaming and crying for

almost 45 minutes. However, the court permitted her testimony from the first trial to be read to the jury. The victim testified in the previous trial that appellant came into the bedroom, pulled down her jeans and panties, lifted up her nightgown, squeezed her buttocks, said the "f-word," and tried to get on top of her from behind. This testimony alone is sufficient to overcome a challenge to the sufficiency of the evidence. The jury easily could have inferred a specific intent to make sexual contact from the circumstances surrounding appellant's touching of the victim's buttocks.

{¶9} Appellant's first assignment of error is overruled.

## II. Manifest Weight of the Evidence

{¶10} In his second assignment of error, appellant argues that his conviction must be overturned because it was against the manifest weight of the evidence. A challenge to the manifest weight of the evidence questions whether the state has met its burden of persuasion. *State v. Byrd*, 8th Dist. Cuyahoga No. 98037, 2012-Ohio-5728, ¶ 27. A reviewing court must examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed. *State v. Jackson*, 8th Dist. Cuyahoga No. 86542, 2006-Ohio-1938, ¶ 29. A challenger's burden is difficult to meet because the resolution of factual issues lies with the trier of fact. *State v. Griffie*, 8th Dist. Cuyahoga No. 89009, 2007-Ohio-5325, ¶ 6, citing *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967). Moreover, a conviction is not against the manifest weight of the evidence simply because conflicting evidence was presented at trial and the jury rejected the defendant's version of the facts and believed the testimony presented by the state. *State v. Gibson*, 8th Dist. Cuyahoga No. 101826, 2015-Ohio-2390, ¶ 38, quoting *State v. Hall*, 4th Dist. Ross No. 13CA3391, 2014-Ohio-2959, ¶ 28.

{¶11} Appellant contends that his conviction is against the manifest weight of the evidence because of the doubtful credibility of the witnesses and the lack of consistency in the victim's testimony. We find that appellant's conviction was not against the manifest weight of the evidence.

{¶12} The victim's mother testified that she, her friend, the victim, her son, and appellant went to Golden Corral for dinner on March 26, 2014. After dinner, the mother stated that the entire group went back to her apartment on Bosworth Avenue in Cleveland, and that the victim and her son went to sleep in the bedroom. After the children went to sleep, both the mother and her friend testified that appellant wanted the friend to leave so he could have alone time with the mother. The mother testified that her friend left between 1:00 a.m. and 2:00 a.m. Although the mother indicated that she also wanted appellant to leave, she and appellant lay together on the couch in the living room for a short time after her friend left. In an attempt to get appellant to leave, the mother told appellant she was going to get a shower, went into the bathroom, shut the door, and turned the shower on. A short time later, the mother said her crying daughter, the victim, ran into the bathroom and stated that appellant touched her, grabbed her buttocks and said "F*** me." When the mother heard the victim's account, she stated that she grabbed and swung a broomstick at appellant and chased him out of the house. The mother then called 911. After police arrived, the mother stated that she and the victim were transported to Fairview Hospital.

{¶13} The victim's testimony from the first trial, which was read into the record for the jury, stated that she lived with her mother and brother, and that she slept on a bed shared with her brother. On the day of the incident, the victim stated that she and her brother went to sleep when they returned from Golden Corral. Sometime later, the victim awoke on her stomach and found her underwear pulled down and her nightgown lifted. At that point, the victim also testified that

appellant was squeezing her buttocks, and moving his finger up the cheeks of her buttocks and into her anus. Furthermore, the victim explained that appellant muttered the "F-word" and was trying to get behind her. The victim kicked appellant off of her, pulled on her pants and underwear, and went to tell her mother. After informing her mother, the victim stated that she saw her mother hit appellant in the head with a broomstick.

{¶14} A Cleveland police officer who responded to the mother's apartment after her 911 call testified at trial. After interviewing the mother and the victim at the scene, the officer learned that the victim awoke to find her pants and underwear pulled down, and appellant grabbing her buttocks. During the interview, the officer indicated that the victim was crying, upset, and ashamed. After questioning the mother and the victim, the officer later arrested appellant.

{¶15} A sex abuse intake worker with the Cuyahoga County Division of Children and Family Services testified that she was referred to this case. She interviewed the victim on April 23, 2014, and stated that the victim disclosed that appellant pulled down her pants, stuck his finger in her buttocks, and said "F you." Although the intake worker indicated that there were minor inconsistencies in the victim's accounts, she explained that such inconsistencies are common for young victims because of their developing cognitive abilities.

{¶16} A sexual assault forensic nurse examiner testified that she examined the victim at Fairview Hospital. The nurse examiner documented that the victim was bubbly and smiling at the hospital. However, the victim told the nurse examiner that appellant pulled down her pants and underwear, squeezed her buttocks, stuck his finger down her butt crack, and said "F you." Based on the victim's story, the nurse examiner testified that she paid close attention to the victim's buttocks and found no injuries. However, the nurse examiner also acknowledged that the lack of injuries was not uncommon and collected the victim's underwear and a DNA sample for testing.

A DNA analyst also testified and acknowledged that she found no conclusive genetic material belonging to appellant.

**{¶17}** A sex crimes and child abuse detective with the city of Cleveland testified that he was charged with the investigation of this case. The detective spoke with appellant, who admitted to sitting and lying down on the victim's bed when the mother went to take a shower. Appellant explained to the detective that he pushed the victim over to make more room in the bed, but that she woke up and ran to her mother in tears. The detective testified that appellant denied ever removing the victim's clothes.

**{¶18}** Appellant bases his argument on the inconsistencies in the victim's account and the witnesses' alleged lack of credibility. Admittedly, minor details concerning what appellant said to the victim in the bedroom and where the mother was located when the victim told her she had been touched changed. However, the crux of the victim's account did not. Specifically, the victim consistently reiterated that she awoke to find her nightgown lifted, her underwear pulled down, and appellant squeezing her buttocks and using some variation of the "F-word." These facts remained constant from when the victim told her mother and officers right after the incident in March 2014 to when the victim testified at the first trial in July 2014. Furthermore, appellant admitted to the detective that he was present in the victim's bedroom, sat on the bed, and touched her, although appellant claimed he only touched the victim to make room for himself on the bed. The jury was in the best position to weigh the credibility of the witnesses, and the record elucidates that the jury considered the credibility of the accounts and all the evidence in returning a guilty verdict against appellant.

**{¶19}** Appellant's second assignment of error is overruled.

**{¶20}** Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
FRANK D. CELEBREZZE, JR., ADMINISTRATIVE JUDGE

LARRY A. JONES, SR., J., CONCURS;
MARY J. BOYLE, J., CONCURS IN JUDGMENT ONLY