[Cite as *In re D.W.*, 2022-Ohio-1407.]

# COURT OF APPEALS OF OHIO

# EIGHTH APPELLATE DISTRICT
# COUNTY OF CUYAHOGA

IN RE D.W.                           :

                                     :          No. 110960

A Minor Child                        :

---

## JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** April 28, 2022

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Juvenile Division
Case No. DL-19-110577

---

### *Appearances:*

The Law Office of Jaye M. Schlachet, Jaye M. Schlachet,
and Eric M. Levy, *for appellant.*

Michael C. O'Malley, Cuyahoga County Prosecuting
Attorney, and Jamielle Lamson-Buscho, Assistant
Prosecuting Attorney, *for appellee.*

FRANK DANIEL CELEBREZZE, III, J.:

{¶ 1} Defendant-appellant D.W. brings this appeal challenging his adjudication of delinquency for gross sexual imposition. Appellant argues that his adjudication of delinquency was not supported by sufficient evidence and that the juvenile court's judgment is against the manifest weight of the evidence. After a thorough review of the record and law, this court affirms.

# I. Factual and Procedural History

{¶ 2} The instant matter arose from a June 2019 incident during which appellant inappropriately touched the victim, N.F. The incident occurred at the house where appellant resided with his younger brother and codefendant, who was also present at the time.[1] At the time of the incident, the victim was six years old, and appellant was 16 or 17 years old. The victim considered appellant and his brother to be her "godbrothers."

{¶ 3} The victim's mother, A.F., and appellant's mother, V.W., were friends. V.W. was named the godmother of the victim. V.W. and the victim had a very close relationship and spent a lot of time together. The victim would spend time at V.W.'s house on the weekends and during holidays. The relationship between the victim and V.W. changed after the June 2019 incident.

{¶ 4} The victim alleged that appellant touched her on her "behind" with his hands and his "private part." The victim subsequently disclosed what transpired with appellant to her grandmother, M.N. The grandmother informed A.F., and the victim was taken to the hospital for an examination. Following the medical examination, the victim and her mother filed a police report.

{¶ 5} On September 3, 2019, the state filed a four-count complaint charging appellant with: Count 1, rape, in violation of R.C. 2907.02(A)(2), alleging digital vaginal penetration; Count 2, rape, in violation of R.C. 2907.02(A)(1)(b), alleging

---

[1] Appellant's brother was charged in Cuyahoga J.C. No. DL-19-110578.

digital vaginal penetration; Count 3, gross sexual imposition, in violation of R.C. 2907.05(A)(4), alleging touching of the victim's vagina; and Count 4, gross sexual imposition, in violation of R.C. 2907.05(A)(1), alleging touching of the victim's vagina.[2]  Appellant denied the allegations in the complaint during his arraignment.

{¶ 6} On February 10, 2021, the trial court held a competency hearing. Following the victim's testimony, the trial court determined that she was competent to testify.

{¶ 7} The trial court held an adjudicatory hearing on May 24, 2021.  A.F., the victim, and the victim's grandmother M.N. testified at the adjudicatory hearing.  The testimony of these witnesses will be set forth in further detail below.

{¶ 8} At the close of the adjudicatory hearing, the trial court found appellant delinquent on Count 3, gross sexual imposition, a third-degree felony in violation of R.C. 2907.05(A)(4).  The trial court found appellant not delinquent on Counts 1, 2, and 4.  Counts 1, 2, and 4 were dismissed on the merits pursuant to Juv.R. 29(F)(1).

{¶ 9} A magistrate held a dispositional hearing on August 13, 2021. Appellant was sentenced to community control for a definite period of 12 months and ordered to perform 100 hours of community service.  (Tr. 38-39.)  Appellant was also ordered to register as a Tier I sex offender for a period of ten years.  (Tr. 37.)

---

[2] Appellant does not raise any issues in this appeal regarding the state's failure to amend the complaint, pursuant to Juv.R. 22(B), to conform to the evidence presented at the adjudicatory hearing.

{¶ 10} The magistrate's decision was filed on August 24, 2021. On August 27, 2021, appellant filed objections to the magistrate's decision. Appellant objected to being required to perform 100 hours of community service.

{¶ 11} On October 6, 2021, the trial court issued two judgment entries. First, the trial court sustained appellant's objections pertaining to community service and modified the magistrate's decision accordingly. Second, the trial court affirmed, approved, and adopted the remaining aspects of the magistrate's decision.

{¶ 12} On October 29, 2021, appellant filed the instant appeal challenging his adjudication of delinquency for gross sexual imposition. Appellant assigns two errors for review:

> I. Appellant's adjudication must be reversed as the state of Ohio failed to present sufficient evidence to support the conviction.
>
> II. Appellant's adjudication is against the manifest weight of the evidence.

## II. Law and Analysis

### A. Sufficiency

{¶ 13} In his first assignment of error, appellant argues that his adjudication of delinquency was not supported by sufficient evidence.

{¶ 14} In reviewing a sufficiency challenge to a juvenile's adjudication of delinquency, this court applies the same standard of review applicable to criminal convictions. *In re L.R.F.*, 2012-Ohio-4284, 977 N.E.2d 138, ¶ 12 (8th Dist.), citing *In re Watson*, 47 Ohio St.3d 86, 91, 548 N.E.2d 210 (1989). The test for sufficiency requires a determination of whether the prosecution met its burden of production

at trial. *State v. Bowden*, 8th Dist. Cuyahoga No. 92266, 2009-Ohio-3598, ¶ 12. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997).

{¶ 15} In the instant matter, appellant initially argues that the state failed to prove that venue was proper in Cuyahoga County, and the state failed to prove that appellant was under the age of 18 at the time of the incident, such that the juvenile court had jurisdiction over the matter. Appellant's arguments are misplaced and unsupported by the record.

> Although venue is not a material element of the offense charged, venue is a fact that must be proved in a criminal prosecution *unless it is waived by the defendant. State v. Headley*, 6 Ohio St.3d 475, 453 N.E.2d 716 (1983). As such, *a defendant waives the right to challenge venue when the issue is raised for the first time on appeal. State v. Coley*, 93 Ohio St.3d 253, 258, 2001-Ohio-1340, 754 N.E.2d 1129, citing *State v. Campbell*, 90 Ohio St.3d 320, 336, 738 N.E.2d 1178, 1197 (2001); *State v. Williams*, 51 Ohio St.2d 112, 364 N.E.2d 1364 (1977), paragraph one of the syllabus.

(Emphasis added.) *State v. Rivera*, 8th Dist. Cuyahoga No. 99185, 2013-Ohio-3244, ¶ 47.

{¶ 16} In the instant matter, appellant did not raise the issue of venue in the juvenile court. Accordingly, he waived his right to challenge venue in this appeal. The complaint provided that the approximate location of the rape and gross sexual imposition offenses was on Holborn Avenue in Cleveland, Ohio, 44105. Appellant did not raise the issue of any defects in the complaint below.

{¶ 17} Nevertheless, the victim's mother, A.F., testified that V.W. lived in Cleveland, Ohio, in Cuyahoga County, near or off of East 131st Street, and that the zip code in the area was 44105. This evidence, if believed, was sufficient to establish that venue was proper in Cuyahoga County.

{¶ 18} Regarding appellant's age, the complaint provided appellant's date of birth and age. Again, appellant did not raise the issue of any defects in the complaint below.

{¶ 19} During the adjudicatory hearing, the state read into the record details from Detective Kevin Smith's supplemental report before resting. Defense counsel did not object to this information. The prosecutor asserted, in relevant part, "[t]he detective also in his investigation discovered that [appellant], the accused, his birthday is June 8th, 2002, and at the time he was 17 years old, and the detective also learned in his investigation that the date of occurrence was on or about June 2nd, 2019." (Tr. 50.) This evidence, if believed, was sufficient to establish that appellant was under the age of 18 at the time of the incident.

{¶ 20} Appellant further argues that the state failed to prove that appellant was the individual that touched the victim and that appellant engaged in "sexual contact."

{¶ 21} Appellant was adjudicated delinquent on Count 3, gross sexual imposition, a third-degree felony in violation of R.C. 2907.05(A)(4), which provides that no person shall have sexual contact with a child less than thirteen years of age, regardless of whether the offender knows the age of that person.

{¶ 22} R.C. 2907.01(B) defines "sexual contact" as "any touching of an erogenous zone of another, including without limitation the thigh, genitals, *buttock*, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person." (Emphasis added.) The Ohio Revised Code does not define "sexual arousal" or sexual "gratification." However, R.C. 2907.01(B) "'contemplate[s] any touching of the described areas which a reasonable person would perceive as sexually stimulating or gratifying.'" *State v. Tate*, 8th Dist. Cuyahoga No. 98221, 2013-Ohio-370, ¶ 18, quoting *State v. Astley*, 36 Ohio App.3d 247, 250, 523 N.E.2d 322 (10th Dist.1987); *see also In re Anderson*, 116 Ohio App.3d 441, 443, 688 N.E.2d 545 (12th Dist.1996).

{¶ 23} The state must present sufficient evidence, as an essential element of the offense of gross sexual imposition, that the sexual contact was for a sexual purpose. However, "'there is no requirement that there be direct testimony regarding sexual arousal or gratification.'" *Tate* at ¶ 19, quoting *State v. Meredith*, 12th Dist. Warren No. CA2004-06-062, 2005-Ohio-2664, ¶ 13.

> In determining whether sexual contact occurred, the trier of fact may infer from the evidence presented at trial whether the defendant's contact with the areas of the body outlined in R.C. 2907.01 was for the purpose of sexual arousal or gratification. *Tate*; *State v. Cobb*, 81 Ohio App.3d 179, 185, 610 N.E.2d 1009 (9th Dist.1991). The purpose of the contact may be inferred from the type, nature, and circumstances of the contact. *Tate* at ¶ 20, citing *Meredith*; *see also Ohio v. Coleman*, 8th Dist. Cuyahoga No. 102291, 2015-Ohio-4491, ¶ 7 (finding that purpose may also be inferred from the defendant's conduct as well as his or her personality). Accordingly, "[i]f the trier of fact determines that the defendant was motivated by desires of sexual arousal or gratification, and that the contact occurred, then the trier of fact may conclude that the object of the defendant's motivation was achieved." *Cobb* at 185.

*State v. Fears*, 8th Dist. Cuyahoga No. 104868, 2017-Ohio-6978, ¶ 65.

{¶ 24} Appellant appears to challenge the victim's in-court identification of appellant. As an initial matter, appellant did not object to or otherwise challenge the victim's in-court identification during the adjudicatory hearing. He raises the issue for the first time in this appeal. Accordingly, this court reviews for plain error. *See State v. Shelton*, 1st Dist. Hamilton No. C-170547, 2018-Ohio-3895, ¶ 33, citing *State v. Steelman*, 2018-Ohio-1732, 111 N.E.3d 923 (1st Dist.), and *State v. Meyers*, 154 Ohio St.3d 405, 2018-Ohio-1903, 114 N.E.3d 1138, ¶ 125.

{¶ 25} The victim's identification of appellant was sufficient to establish appellant's identity as the individual that touched her. The prosecutor asked the victim whether she saw the person who touched her in the courtroom. The victim answered affirmatively. The prosecutor asked the victim to point to "that person." At this point, from what we are able to discern from the record, the victim pointed at appellant. (Tr. 42.)

{¶ 26} Thereafter, the prosecutor asked the record to reflect that the victim pointed towards appellant. The trial court asked appellant's counsel whether she also observed the victim point towards appellant. Appellant's counsel stated, "I did not see that," and asked if the victim could "indicate again." The prosecutor instructed the victim to "point higher." Thereafter, appellant's counsel confirmed that she "was able to view that, your Honor." (Tr. 42.)

{¶ 27} The victim was not required to, as appellant suggests, describe appellant's clothing in addition to pointing at appellant. In summarizing the

evidence, the trial court acknowledged that the victim "did identify in open court that the alleged delinquent [appellant] was the perpetrator." (Tr. 59.)

{¶ 28} Accordingly, the state's evidence, if believed, was sufficient to establish that appellant was the individual that touched the victim. Furthermore, appellant failed to demonstrate plain error with respect to the victim's in-court identification of appellant.

{¶ 29} After reviewing the record, we find that the state presented sufficient evidence, if believed, to establish that sexual contact occurred between appellant and the victim. The victim testified that appellant touched her where she "didn't want to be touched" and where she "wasn't supposed to be touched." The victim explained that appellant touched her "[o]n [her] behind." She testified that appellant touched her on her behind with his hands.

{¶ 30} The victim testified that appellant also touched her on her behind with his "private part." (Tr. 40.) The following exchange occurred during the victim's direct examination:

[Prosecutor]: Say it loud.

[Victim]: His (inaudible).

The Court: His what?

[Victim Advocate]: His private part.

(Tr. 40.) Defense counsel did not object to the advocate's clarification that the inaudible word or words used by the victim was appellant's private part.

{¶ 31} Thereafter, the victim demonstrated, using a teddy bear, the area she considered to be the "private part." Defense counsel did not object to the use of the teddy bear. During closing arguments, however, defense counsel did argue, in relevant part, "I don't know for sure what [the victim] meant by behind or private parts, your Honor. She indicated — she pointed to a teddy bear, general area, the bottom of its body, but other than that, it's unclear." (Tr. 56-57.)

{¶ 32} The trial court noted for the record that the teddy bear was not an anatomical doll, but nevertheless confirmed that it saw where the victim pointed to on the bear. The trial court subsequently acknowledged that the victim testified that

> she was touched and that that touch seemed to be offensive and that that touch was on her behind. * * * [The victim] was aware that there was a touching and that it occurred to her behind. And she testified that it was the private part of one of [V.W.'s] sons, and that she did identify in open court that the alleged delinquent [appellant] was the perpetrator.

(Tr. 59.)

{¶ 33} The victim confirmed that other than her "behind," appellant did not touch her anywhere else. After indicating on the bear the area she considers to be the private part, the victim answered affirmatively when asked if appellant touched her "with anything else." As noted above, the victim testified that appellant also touched her with his hands.

{¶ 34} Viewing the evidence in a light most favorable to the prosecution, we conclude that a rational trier of fact could find that appellant engaged in "sexual contact" when he touched the victim's "behind." The "behind," or buttock,

constitutes an "erogenous zone" under R.C. 2907.01(B). Furthermore, the manner and circumstances of appellant's contact with the victim, including the fact that appellant touched the victim's buttock using both his hands and his "private part," was sufficient to allow the trial court to infer that appellant's touching of the victim was motivated by desires of sexual gratification. *See Fears*, 8th Dist. Cuyahoga No. 104868, 2017-Ohio-6978, at ¶ 68, citing *Tate*, 8th Dist. Cuyahoga No. 98221, 2013-Ohio-370, at ¶ 23, and *In re Anderso*n, 116 Ohio App.3d at 443, 688 N.E.2d 545.

{¶ 35} The victim testified that she would "play" with appellant and his brother at V.W.'s house. Regarding the touching, however, the victim testified that appellant touched her where she did not want to be touched and where she was not supposed to be touched. Based on this testimony, the trial court could have reasonably inferred that the touching was inappropriate and not merely an incidental touching that occurred during otherwise innocent play. The record reflects that the trial court did, in fact, draw such an inference. As noted above, in summarizing the victim's testimony, the trial court noted that the "touch seemed to be offensive[.]" (Tr. 59.)

{¶ 36} Finally, appellant appears to argue that the advocate's aforementioned clarification about the victim's inaudible testimony, during which the advocate referred to appellant's "private part," was inadmissible. Appellant did not object to the advocate's clarification, and as a result, has waived all but plain error.

{¶ 37} The adjudicatory hearing was conducted by the juvenile court judge. This court presumes that the juvenile court only considered relevant evidence in rendering its verdict. *See State v. Jeffries*, 8th Dist. Cuyahoga No. 106889, 2018-Ohio-5039, ¶ 15.

> In reviewing a bench trial, "an appellate court presumes that a trial court considered nothing but relevant and competent evidence in reaching its verdict," and this presumption "may be overcome only by an affirmative showing to the contrary by the appellant." *State v. Wiles*, 59 Ohio St.3d 71, 86, 571 N.E.2d 97 (1991). *See also State v. Montgomery*, 10th Dist. Franklin No. 13AP-512, 2014-Ohio-4354, ¶ 20, citing *State v. Rowe*, 2d Dist. Montgomery No. 25993, 2014-Ohio-3265, ¶ 45 ("Appellate courts presume that a trial court only considered relevant and admissible evidence in a bench trial.").

*State v. Pearson*, 10th Dist. Franklin Nos. 14AP-793 and 14AP-816, 2015-Ohio-3974, ¶ 13.

{¶ 38} The record reflects that it was the victim, not the advocate, that testified that appellant touched her with his private part. The victim's testimony on this point was transcribed as "(inaudible)." (Tr. 40.) The trial court interjected: "[h]is what?" At this point, the advocate stated, "[h]is private part." (Tr. 40.)

{¶ 39} During closing arguments, defense counsel acknowledged that the victim referenced appellant's "private parts." Defense counsel argued, "I don't know for sure what [the victim] meant by * * * private parts[.]" (Tr. 56.) Defense counsel's argument indicates that it was the victim, not the advocate, that testified that appellant touched her with his private part. The trial court acknowledged that "[the victim] testified that [the touching involved] the private part of one of [V.W.'s] sons, and that [the victim] did identify in open court that the alleged delinquent

[appellant] was the perpetrator." (Tr. 59.) Accordingly, appellant has failed to meet his burden of demonstrating plain error with respect to the advocate's clarification.

{¶ 40} For all of the foregoing reasons, we find that appellant's adjudication of delinquency for gross sexual imposition was supported by sufficient evidence. Appellant's first assignment of error is overruled.

## B. Manifest Weight

{¶ 41} In his second assignment of error, appellant argues that his adjudication of delinquency is against the manifest weight of the evidence.

{¶ 42} This court also applies the same standard of review applicable to criminal convictions in determining whether a juvenile's adjudication of delinquency is against the manifest weight of the evidence. *In re B.J.*, 8th Dist. Cuyahoga No. 110223, 2021-Ohio-3926, ¶ 36, citing *In re M.P.*, 8th Dist. Cuyahoga No. 93152, 2010-Ohio-2216, ¶ 22.

{¶ 43} A manifest weight challenge questions whether the state met its burden of persuasion. *Bowden*, 8th Dist. Cuyahoga No. 92266, 2009-Ohio-3598, at ¶ 12. A reviewing court "'weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *Thompkins*, 78 Ohio St.3d at 387, 678 N.E.2d 541, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). A conviction should be reversed as

against the manifest weight of the evidence only in the most "exceptional case in which the evidence weighs heavily against the conviction." *Id.*

{¶ 44} In support of his manifest weight challenge, appellant incorporates the arguments raised in his first assignment of error. Furthermore, appellant appears to challenge the credibility of the victim and her testimony during the adjudicatory hearing.

{¶ 45} Initially, we note that prior to the adjudicatory hearing, the trial court found the victim competent to testify. This finding means that the trial court determined that the victim "is capable of receiving impressions of facts and events and can accurately relate them." *Fears*, 8th Dist. Cuyahoga No. 104868, 2017-Ohio-6978, at ¶ 70, citing *State v. Frazier*, 61 Ohio St.3d 247, 251, 574 N.E.2d 483 (1991). In finding that the victim was competent, the trial court determined that she "had an understanding of truth and falsity and she could appreciate her own responsibility to be truthful." *Fears* at *id.*, citing *State v. Ferrell*, 8th Dist. Cuyahoga No. 92573, 2010-Ohio-1201, ¶ 59. This court is mindful that the determination of whether a child is competent to testify is within the sound discretion of the trial judge. *Fears* at *id.*, citing *Frazier*.

{¶ 46} Appellant appears to argue that his adjudication of delinquency is against the manifest weight of the evidence because the teddy bear that the victim used to identify appellant's "private part" was not anatomically correct.

{¶ 47} This court is constrained to reviewing the paper transcript of the adjudicatory hearing. The teddy bear that the victim used to identify the "private

part" is not in our record. The adjudicatory hearing was audio recorded, not video recorded, and as a result, we are unable to see exactly how or where the victim identified the "private part." Accordingly, we must heavily defer to the trial court regarding the credibility of the victim's identification of the "private part" on the teddy bear.

{¶ 48} The trial court noted for the record that the teddy bear was not an anatomical doll. Furthermore, the trial court confirmed that it saw where the victim pointed to on the bear. In summarizing the evidence, the trial court acknowledged that the victim testified that the touching involved "the private part of [appellant.]" (Tr. 59.) In adjudicating appellant delinquent of gross sexual imposition, the trial court evidently determined that the victim's identification of the "private part" on the teddy bear was, in fact, credible.

{¶ 49} Furthermore, appellant appears to argue that the victim's testimony was not credible because it was vague and lacking in detail.

{¶ 50} The state acknowledged during closing arguments that the victim did not go into "great detail" or use correct anatomical terminology when testifying about the incident. (Tr. 55.) However, the state emphasized that the victim was six years old at the time of the incident, and eight years old at the time of the adjudicatory hearing. The trial court had sufficient information about the victim's age to assess the credibility of the victim and her testimony. *See State v. Solomon*, 8th Dist. Cuyahoga No. 109535, 2021-Ohio-940, ¶ 59; *State v. Davis*, 8th Dist.

Cuyahoga No. 107925, 2019-Ohio-4672, ¶ 66; *State v. Sumlin*, 8th Dist. Cuyahoga No. 108000, 2020-Ohio-1600, ¶ 58.

{¶ 51} The state's evidence regarding the victim's demeanor at the time of disclosure and her behavior following the incident supported the state's theory that appellant committed the offense of gross sexual imposition. A.F. testified that the victim's behavior changed after the victim informed her what transpired. The victim "started misbehaving in school and she started using the bathroom on herself." (Tr. 24.) The victim was wetting the bed, acting out in school, not listening to the teachers, and not following directions. The victim's behavior after the incident was different than her behavior before the incident. A.F. took the victim to counseling.

{¶ 52} A.F. testified that the victim and V.W. were very close with one another and spent a lot of time together. After the June 2019 incident, however, the relationship between the victim and V.W. changed. At the time of the adjudicatory hearing, the victim no longer had a relationship with V.W.

{¶ 53} The victim's grandmother testified that the victim's demeanor at the time of disclosure was sad and serious. She explained that the victim did not normally behave like this, and the grandmother had never seen the victim like that before.

{¶ 54} Following the disclosure, the grandmother noticed a change in the victim. She explained that the victim was hyper, snappy, and angry. The grandmother testified that the victim "started acting differently, like ducked her head down" when she was normally more outgoing.

{¶ 55} In adjudicating appellant delinquent of gross sexual imposition, the trial court clearly concluded that the victim's testimony was, in fact, credible.

{¶ 56} Finally, appellant appears to argue that the victim's testimony was not credible and that it was "tainted by the advocate[.]" Appellant's brief at 16. Appellant argues that the victim's advocate "improperly sat next to [the victim] and repeatedly spoke to her during the questioning and changed [the victim's] answers or otherwise answered for [the victim]." Appellant's argument is misplaced and unsupported by the record.

{¶ 57} As noted above, this court presumes that in a bench trial, the trial court considered only relevant and competent evidence. The record reflects that defense counsel raised two objections with respect to the advocate during the direct examination of the victim. First, defense counsel objected to the advocate "speaking to the [victim] during her direct exam." (Tr. 36.) This objection was raised in the context of the prosecutor asking the victim if she knew why she was in court on the day of the adjudicatory hearing. The trial court noted defense counsel's objection for the record. The advocate explained that the advocate was not speaking to the victim about her testimony, but merely asking the victim if she wanted to hold the advocate's hand. (Tr. 36.)

{¶ 58} Second, defense counsel objected to the advocate "speaking to the witness." (Tr. 43.) This objection was raised in the context of the prosecutor asking the victim about disclosing to her grandmother what transpired with appellant. The advocate explained that the victim was "about to fall out of the chair," and the

advocate "told her to sit back in the chair." (Tr. 43.) The trial court reflected on the record the objection and the advocate's response.

{¶ 59} After reviewing the record, we find no basis upon which to conclude that the advocate's participation in the adjudicatory hearing "tainted" the victim's testimony or renders appellant's adjudication of delinquency against the manifest weight of the evidence.

{¶ 60} For all of the foregoing reasons, appellant's second assignment of error is overruled. Appellant's adjudication of delinquency for gross sexual imposition is not against the manifest weight of the evidence. This is not the exceptional case in which the evidence weighs heavily against appellant's adjudication.

### III. Conclusion

{¶ 61} After thoroughly reviewing the record, we affirm the trial court's judgment. Appellant's adjudication of delinquency for gross sexual imposition was supported by sufficient evidence and was not against the manifest weight of the evidence.

{¶ 62} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court, juvenile division, to carry this judgment into execution. The

defendant's adjudications having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of commitment.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
FRANK DANIEL CELEBREZZE, III, JUDGE

SEAN C. GALLAGHER, A.J., and
KATHLEEN ANN KEOUGH, J., CONCUR